***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and the claim.
2. All parties have been correctly designated and there is no question as to the misjoinder or non-joinder of parties.
3. An employer-employee relationship existed between plaintiff and defendant, Wal-Mart Stores, Inc., (hereinafter referred to as "defendant-employer") on September 28, 2000, the alleged date of injury.
4. Plaintiff's average weekly wage was approximately $335.19 per week, yielding a weekly compensation rate of $223.47.
5. This is an admitted claim for compensation accepted by defendants pursuant to G.S. § 97-18(b), defendants having paid indemnity compensation for total disability under G.S. § 97-29 and medical compensation to plaintiff and his authorized treating physicians under G.S. § 97-25. Defendants executed and filed I.C. Form 60 on August 27, 2001, acknowledging plaintiff's entitlement to compensation for disability commencing on June 25, 2001.
6. Defendants sought to terminate compensation by executing and filing a Form 24 Application on October 18, 2001.
7. Also on October 18, 2001, defendants executed and filed a Form 61 Denial of Workers' Compensation Claim pursuant to G.S. § 97-18(c) and (d), purporting to deny medical treatment for plaintiff's back for his injury sustained on September 28, 2000.
8. On October 30, 2001, plaintiff, appearing pro se, filed a Form 33 Request for Hearing in response to defendants' Form 61.
9. Following an administrative hearing, defendants' Application to Terminate Compensation was denied by Order entered December 10, 2001, by Special Deputy Elizabeth M. "Lacy" Maddox.
10. On December 12, 2001, defendants filed a Form 33R response to plaintiff's Form 33.
11. On December 20, 2001, defendants appealed the Order of Special Deputy Maddox and filed a Form 33 Request for Hearing on all issues previously raised in their previously filed Form 33 and 33R.
12. Compensation has been paid to plaintiff since June 25, 2001, pursuant to G.S. § 97-18(b) and Form 60 executed by defendants, in the amount of $223.47 per week.
In addition, the parties stipulated into evidence the following:
 1. Forty-three pages of medical records and reports marked as Exhibit A.
 2. Sixteen pages of Activity Status Reports marked as Exhibit B.
 3. Twelve pages of Industrial Commission documents marked as Exhibit C.
The Pre-Trial Agreement dated June 10, 2002 which was submitted by the parties is incorporated by reference.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was twenty-five (25) years old at the time of the deputy commissioner hearing in this matter. Plaintiff is a native of Algeria, speaks five languages, and has completed five years of college training in Algeria and Russia specializing in engineering and languages. Plaintiff subsequently moved to the United States and in November 1999 began working for Wal-Mart at one of its Raleigh, North Carolina locations. On September 28, 2000, plaintiff sustained a compensable injury at work when a cart loaded with merchandise fell against his left leg. Following the accident, plaintiff experienced left leg pain, initially concentrated in the hip and knee areas. However, plaintiff did not seek medical attention for over a month and was able to continue working. In November 2000, plaintiff's pain gradually became worse he was sent by defendant-employer to Concentra Medical Center where he saw Dr. Sepka who prescribed medication and gave him work restrictions.
2. By November 22, 2000, plaintiff was complaining of pain in his lower left leg and ankle in addition to the knee pain. Dr. Sepka and then Dr. Landolf treated him conservatively for what appeared to be leg injuries. However, by December 12, 2000 Dr. Landolf was of the impression that plaintiff's symptoms were of a radicular nature. Dr. Admonis then saw plaintiff on December 22, 2000 and concurred, so he ordered an MRI of the lumbar spine. Plaintiff's MRI exam revealed degenerative disc disease at L4-5 and L5-S1 with a disc protrusion at L5-S1 which was displacing the nerve root and a bulging disc at L4-5 which was also causing some nerve root compression. When Dr. Landolf evaluated plaintiff on January 2, 2001 and reviewed the MRI results, he concluded that plaintiff's left leg pain was radiating from the disc protrusion in the lumbar spine which was impinging on the nerve. Consequently, Doctor Landolf referred plaintiff to Dr. Bush, an orthopedic surgeon at the clinic.
3. Dr. Bush examined plaintiff on January 8, 2001. By that time, plaintiff had developed a partial foot drop. Dr. Bush recommended an epidural steroid injection which was subsequently performed and which provided plaintiff with significant relief. Plaintiff then took physical therapy and improved to the point that Dr. Bush thought surgery would not be necessary. However, on June 25, 2001, plaintiff returned to Dr. Bush with recurrent symptoms which appeared to be worse with prolonged standing and walking. Dr. Bush then ordered another epidural steroid injection.
4. Plaintiff had been given work restrictions since he had first received medical treatment for his injury and he continued working with defendant-employer until approximately July 7, 2001. Plaintiff then underwent the epidural steroid injection and remained out of work pursuant to the instructions of Dr. Bush.
5. Plaintiff apparently had two epidurals in July 2001 but, when he saw Dr. Bush on August 6, 2001, he reported persistent pain and a heavy feeling in his left leg which had not been improved by the injections. At that time, Dr. Bush recommended that plaintiff consider surgery. On August 20, 2001, plaintiff advised the doctor that he had decided against having the operation. Rather, plaintiff wanted to try more physical therapy. Consequently, Dr. Bush ordered physical therapy and released plaintiff to return to work at light-duty. Plaintiff last saw Dr. Bush on September 17, 2001. At that time, plaintiff reported that he was not having problems as long as he was careful, physical therapy had helped him, and he still did not want surgery. Consequently, Dr. Bush released plaintiff with permanent restrictions of no repetitive lifting of more than ten pounds, no prolonged standing or walking for more than one hour without a fifteen minute rest period, and no bending more than three times per hour.
6. On September 24, 2001 plaintiff returned to defendant-employer to discuss returning to work. Denise Edwards, the personnel manager, reviewed his restrictions and offered him a greeter position, where he would greet customers coming into the store, tag returned merchandise, and give stickers to children. The greeter job was a regularly filled position at defendant-employer. When plaintiff objected to pushing carts and sweeping, Ms. Edwards advised plaintiff that they would accommodate him and not require him to do things beyond his capacity. Plaintiff then advised her that he could not stand at all, so she offered to provide him a stool so that he could sit. Plaintiff's assertions that he could not push carts or stand at all went beyond the restrictions Dr. Bush had given. Ms. Edwards also noted that during the time plaintiff was in the store on this date, he was pushing a cart, lifting his twenty-month-old son, and picking up pieces of food that his child dropped on the floor. Ultimately, plaintiff refused to return to work in the greeter position.
7. Defendants admitted liability for plaintiff's left leg injuries that occurred on September 28, 2000 pursuant to a Form 60, Employer'sAdmission of Employee's Right to Compensation but later denied liability for medical treatment related to plaintiff's back condition pursuant to a Form 61, Denial of Workers' Compensation Claim. Defendants also filed a Form 24, Application to Terminate or Suspend Payment of Compensation that was denied by Administrative Order filed December 10, 2001; consequently, defendants appealed the Form 24 decision by requesting a hearing with a deputy commissioner pursuant to Workers' Compensation Rule 404.
8. The greeter position offered by defendant-employer on September 24, 2001 was suitable work for plaintiff as it was within the restrictions given by Dr. Bush and was contemplated as transitional employment limited to the healing period as plaintiff had not yet reached maximum medical improvement. Thus, plaintiff's refusal of the greeter position was unjustified. The Form 24 request to stop payment of workers' compensation benefits to plaintiff was improvidently denied. Defendants should have been allowed to cease payment of benefits to plaintiff effective September 25, 2001.
9. Since September 2001, plaintiff has made no effort to return to work but has started attending school.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In that plaintiff refused to return to return to work without justification during the healing period prior to reaching maximum medical improvement in a transitional position offered by defendant-employer which was suitable to his capacity, defendants were entitled to suspend his compensation beginning September 25, 2001 and continuing for as long as his refusal continued. G.S. § 97-32.
2. The Form 24 request to stop payment filed by defendants was improvidently denied. G.S. § 97-18.1.
3. Defendants are entitled to a credit for overpayment of compensation which was paid after September 24, 2001 for the period of plaintiff's refusal to return to work against any future compensation due. G.S. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants, who may suspend payment of compensation to plaintiff at this time, are entitled to a credit for overpayment of compensation paid after September 24, 2001 for the period plaintiff refused to accept suitable work as against any future compensation due.
2. Each side shall bear its own costs.
3. The Administrative Order filed December 10, 2001 is hereby RESCINDED.
This the ___ day of June 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER